STROTHER, SALE, CURD & ST. CLAIR *v.* McDOWELL COUNTY NATIONAL BANK

(No. 7341)

Submitted September 27, 1932. Decided November 22, 1932.

76

*Strother, Sale, Curd & St. Clair,* for plaintiffs in error.
*Crockett & Tucker,* for defendant in error.

LIVELY, JUDGE:

Plaintiffs, D. J. F. Strother, Graham Sale, T. H. S. Curd and Otis E. St. Clair, as members of the law firm of Strother, Sale, Curd & St. Clair, of Welch, West Virginia, prosecute this writ to the judgment of the circuit court of McDowell county, entered on its finding in favor of defendant, McDowell County National Bank, of Welch.

The action is by notice of motion for judgment on a claim for extraordinary legal services rendered by plaintiffs to First National Bank, of Welch, which they assert was assumed by defendant bank. By written contract of June 30, 1930, First National Bank, of Welch, whose doors had been closed by the Comptroller of the Currency, sold, transferred and assigned its assets to McDowell County National Bank, in consideration whereof and the payment by the vendor to the vendee of $300,000, the latter assumed all liabilities of the former "as shown by" its books on June 30, 1930 (except debts to shareholders), and agreed also to pay all claims of depositors of the First National Bank. Soon after the transaction, plaintiffs who had been employed continuously for many years as attorneys for First National Bank at a salary of twelve hundred dollars ($1200.00) annually, advised the president of the purchasing bank that First National Bank owed them for extraordinary legal services rendered to it by an attorney in their employ, while daily visiting the bank during a period of approximately six months immediately preceding the time of its ceasing to do business. Written communications between the parties concerning the claim

thereafter occurred, as follows: July 16, 1930, Mr. Strother wrote defendant, stating that he had on that day called the matter to the attention of its president, I. J. Rhodes, and requesting it to pay his firm $600.00 as compensation for these services. On July 18, 1930, Strother wrote defendant again, referring to a conversation between himself and Rhodes the day previous concerning the matter in which Rhodes had raised the question that the claim was not shown on the books of First National Bank, and requesting payment without delay. Rhodes replied by letter of July 29, 1930, advising Strother that as the claim could not be found on the books of First National Bank he could not assume the authority to pay it without express direction by the board of directors. In a letter to defendant, dated July 9, 1931, Strother referred to a previous letter of June 30, 1931, in which he had again mentioned the claim, and requested defendant to advise him what it proposed to do about the matter.

Mr. Strother testified (without stating the time) that he went to the banking house of defendant when and where he discussed the matter with more than one of its executives (whose names he does not recall) who then and there agreed to pay the claim. In the absence of proof of authority on their part to bind defendant, this oral promise of some of its executives to pay the claim is unavailing. As it does not appear that the books of the bank furnish any evidence of the claim, we are unable to conceive under what theory defendant is liable. It was suggested in conference that the claim might be allowed as an ordinary item of expense in the regular course of the banking business, although it does not come within the terms of liabilities assumed by defendant. The difficulty, however, of so construing plain language is that plaintiffs' right of recovery is predicated upon the theory that the services in question were extraordinary. Pending negotiations between the two banks, immediately preceding the transfer, First National Bank, through its cashier, prepared and furnished McDowell County National Bank a list of its assets and liabilities (including current salary to plaintiffs), which did not disclose the claim in question. It is admitted that the salary received by plaintiffs from the bank covered all ordinary services. Where the terms of a written instrument are clear and

unambiguous, full force and effect should be given to the language used. *Griffith* v. *Coal Co.*, 59 W. Va. 480, 53 S. E. 24.

It has been further suggested that defendant is liable to plaintiffs for the claim asserted in this action because it has paid them fees for other services rendered on behalf of First National Bank, not shown by its books on June 30, 1930. At the time of the transaction between the banks, plaintiffs represented First National Bank as a creditor of George Barley, Bankrupt, and thereafter, as the result of their services in this behalf, collected considerable sums of money on behalf of the bank for which they were allowed substantial fees by defendant. They were clearly entitled to fees paid out of funds produced by their services largely rendered after the date of the contract between the banks.

The judgment of the circuit court is affirmed.

*Affirmed.*

MAXWELL, JUDGE, dissenting:

The testimony on behalf of the plaintiffs that the services involved were not within the field of the usual duties for which they were compensated by First National Bank by annual salary seems clear and convincing. These were in the nature of emergency services which were incident to general economic stress which bore heavily upon the First National as upon many other financial institutions. The special services (referred to in the opinion as extraordinary) would have afforded basis for right of action against said bank. They were rendered day by day for a period of about six months, and, in my judgment, constituted part of the "overhead of operation" existing at the time the defendant "took over" the affairs of the First National. And just as the defendant correctly deemed itself obligated to discharge, and did discharge, other liabilities of the First National, incident to operation, so, I think there is like obligation as to plaintiffs' claim, though the balances due on none of said operating liabilities appeared on the books of the First National.

I think the plaintiffs should recover on their claim. Therefore, I respectfully dissent from the court's opinion and decision.